FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2005 OCT 11  PM 1:57

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GERALD JOSEPH #307539** | **CIVIL ACTION** |
| **versus** | **NO. 05-0728** |
| **BURL CAIN** | **SECTION: "S" (3)** |

## REPORT AND RECOMMENDATION

This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts. Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. § 2254(e)(2).[1] Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1] Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination. According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

___ Fee_____
___ Process_____
_X_ Dktd._____
_V_ CtRmDep._____
___ Doc. No._____

Petitioner, Gerald Joseph, is a state prisoner incarcerated at the Louisiana State Penitentiary, Angola, Louisiana. On October 29, 1998, he was convicted of attempted armed robbery in violation of La.Rev.Stat.Ann § 14:(27)64.[2] On June 24, 1999, he was found to be a second offender and was sentenced as such to a term of twenty-five years imprisonment, without benefit of parole, probation, or suspension of sentence, with credit for time served.[3] On December 5, 2001, the Louisiana Fourth Circuit Court of Appeal affirmed petitioner's conviction and sentence.[4] He then filed with the Louisiana Supreme Court a petition for a writ of certiorari[5] which was denied on January 31, 2003.[6]

On August 5, 2003, petitioner filed with the state district court an application for post-conviction relief.[7] That application was denied on August 18, 2003, without reasons assigned.[8] He next filed with the Louisiana Fourth Circuit Court of Appeal an application for a supervisory writ

---

[2] State Rec., Vol. I of III, minute entry dated October 29, 1998; State Rec., Vol. I of III, jury verdict form.

[3] State Rec., Vol. I of III, transcript of June 24, 1999; State Rec., Vol. I of III, minute entry dated June 24, 1999.

[4] State v. Joseph, No. 2000-KA-2760 (La. App. 4th Cir. Dec. 5, 2001) (unpublished); State Rec., Vol. I of III.

[5] State Rec., Vol. II of III.

[6] State v. Joseph, 836 So.2d 57 (La. 2003) (No. 2002-KO-0200); State Rec., Vol. II of III.

[7] State Rec., Vol. II of III. Petitioner alleges in his federal application that the state application was filed on August 5, 2003. Rec. Doc. 2, supporting memorandum, p. 2. For the purposes of this decision, the Court will accept that allegation as true.

[8] That ruling does not appear in the state record furnished to this Court; however, petitioner attached a copy of the ruling to his federal application.

of review[9] which was also denied without reasons assigned on October 31, 2003.[10] He then filed

with the Louisiana Supreme Court an application for a writ of certiorari[11] which was denied on

December 10, 2004, without reasons assigned.[12]

On February 28, 2005, petitioner filed this federal application for *habeas corpus*

relief.[13] In support of his application, petitioner claims that he received ineffective assistance of

counsel.

The state contends that petitioner's federal application is untimely.[14] Generally, the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires that a petitioner bring

his Section 2254 claims within one (1) year of the date on which his conviction or sentence became

final.[15]

---

[9] State Rec., Vol. I of III.

[10] State v. Joseph, No. 2003-K-1619 (La. App. 4th Cir. Oct. 31, 2003) (unpublished); State Rec., Vol. I of III.

[11] State Rec., Vol. II of III.

[12] State *ex rel.* Joseph v. State, 888 So.2d 830 (La. 2004) (No. 2003-KH-3456); State Rec., Vol. III of III.

[13] Rec. Doc. 2.

[14] Rec. Doc. 16.

[15] 28 U.S.C. § 2244(d) provides:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

As noted, on January 31, 2003, the Louisiana Supreme Court denied petitioner's writ application challenging the intermediate appellate court's judgment affirming his convictions and sentences. Therefore, pursuant to 28 U.S.C. § 2244(d)(1)(A), petitioner's one-year period for seeking federal *habeas corpus* relief commenced no later than May 1, 2003, i.e. ninety (90) days after the Louisiana Supreme Court's judgment, when his time for filing a petition for a writ of certiorari with the United States Supreme Court expired. See Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003); Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999); Chester v. Cain, Civ. Action No. 01-1958, 2001 WL 1231660, at *3-4 (E.D. La. Oct. 15, 2001); see also U.S. Sup. Ct. R. 13(1). Accordingly, petitioner's federal *habeas corpus* statute of limitations expired one year later, unless that deadline was extended through tolling.

The AEDPA provides that the statute of limitations is tolled for the period of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. See Fields v. Johnson, 159 F.3d 914 (5th Cir. 1998); 28 U.S.C. §2244(d)(2). Ninety-five (95) days of petitioner's one-year statute of

---

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

limitations elapsed prior to the filing of his state post-conviction application on August 5, 2003, the first filing which tolled the running of that period pursuant to 28 U.S.C. § 2244(d)(2). After that application was denied on August 18, 2003, petitioner timely sought review of that denial by filing an application for a supervisory writ of review with the Louisiana Fourth Circuit Court of Appeal on September 10, 2003. That application was denied on October 31, 2003; however, the AEDPA statute of limitations remained tolled at least until the time for filing a related writ application with the Louisiana Supreme Court expired. Melancon v. Kaylo, 259 F.3d 401, 406-07 (5th Cir. 2001). Additionally, tolling would continue to run uninterrupted if petitioner timely filed such a writ application with the Louisiana Supreme Court. Id.; see also Dixon v. Cain, 316 F.3d 553, 554-56 (5th Cir. 2003).

The state argues that tolling ceased because petitioner's related writ application was not timely filed with the Louisiana Supreme Court. That fact cannot be determined from the state record submitted to this Court. The rules of the Louisiana Supreme Court provide in pertinent part:

> An application seeking to review a judgment of the court of appeal ... after that court has granted relief on an application for supervisory writs ... or after a denial of an application, shall be made within thirty days of the *mailing of the notice* of the original judgment of the court of appeal.

Louisiana Supreme Court Rule X, § 5(a) (emphasis added). The state record filed with this Court contains no evidence of the date the intermediate appellate court actually mailed out the notice of its October 31 judgment. While it appears that petitioner's writ application *may* well have been untimely filed, the undersigned is unwilling to find that petitioner's opportunity for federal review

of his claims is barred based on what *may* have happened in the state courts.[16] When the state could so easily establish that the writ application was in fact untimely filed, such as by simply providing documentation from the intermediate appellate court establishing the date of mailing, this Court will not take the drastic action of recommending that petitioner's federal application be dismissed as untimely without some proof of that fact in the state court record.

For the foregoing reasons, the Court will assume for the purposes of this decision that petitioner's Louisiana Supreme Court writ application was timely filed and that tolling therefore continued uninterrupted from August 5, 2003, when petitioner filed his state post-conviction application, until December 10, 2004, when the Louisiana Supreme Court denied the related writ application. At that point, petitioner had two hundred seventy (270) days remaining of the one-year statute of limitations. Because his federal application was filed on February 28, 2005, a mere eighty (80) days later, the Court finds that it was timely filed. In light of that fact, and the fact that the state does not contend that petitioner failed to exhaust his state court remedies, the Court will address the merits of the claims presented.

<u>Standard of Review</u>

The AEDPA comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that

---

[16] If the intermediate appellate court mailed notice of the judgment on the same day it was rendered, then the Louisiana Supreme Court writ application most likely was untimely. Under that scenario, the writ application would have had to be filed no later than November 30, 2003; however, petitioner himself alleges that it was not filed until December 4, 2003. Rec. Doc. 2, supporting memorandum, p. 3.

the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.   The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.   The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

### Facts

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> At trial, Tyrone Lavigne testified that at approximately 3:30 p.m., he was en route from the supermarket to his home.  While he was turning into his subdivision he noticed a Jeep Cherokee behind him.  Once Mr. Lavigne turned into his driveway, the Cherokee pulled into the adjacent driveway on his immediate right.  Although hesitant to exit his vehicle, Mr. Lavigne got out of the car to open his

garage door. While in the process of doing so, a subject, who was subsequently identified as Joseph exited the Cherokee and approached him, demanding his money. Joseph had a ski mask covering his face and was holding a gun to Mr. Lavigne's side. Joseph was wearing camouflage pants and a jacket. Mr. Lavigne retrieved the little money he had, approximately fifteen or sixteen dollars, and handed it to Joseph. Joseph also demanded that Mr. Lavigne give him the gold bracelet he was wearing, but when Mr. Lavigne removed the chain, it fell to the ground and was not recovered by the robber. Joseph then entered Mr. Lavigne's car, which was running, and drove off. Mr. Lavigne ran inside his home and called 911. Subsequently, Mr. Lavigne observed that the Cherokee had left the scene. Mr. Lavigne also identified the Cherokee as the vehicle in question from a series of photographs.

Officer Octave Laroche, assigned to Highway Enforcement with the New Orleans Police Department, testified at trial that he received a call on his radio that a carjacking had just occurred in he vicinity that he was patrolling. Officer Laroche proceeded to the north-side service road at I-10 and Bullard Road. As he traveled east bound on the service road, he observed a purple Honda Accord traveling towards him. The officer angled his vehicle so as to block the oncoming vehicle. The Accord, occupied by two subjects at this time, briefly stopped immediately adjacent to Officer Laroche's vehicle and then sped off. The officer pursued the vehicle underneath the interstate until the subjects bailed out of the car and fled on foot towards Humana Hospital. Officer Laroche maintained visual contact as long as he could, giving other units a description and the direction of flight of both subjects. Officer Laroche also testified that the description provided relative to the driver was of a dark skinned African-American male with a medium type Afro, with a small diamond earring and a chain around his neck, wearing a dark shirt with a prominent emblem on the back. The passenger was described as being lighter skinned than the driver, having thick plaits in his hair, and wearing camouflage pants and shirt. Officer Laroche further testified that he was able to observe both subjects' faces when the vehicle was immediately adjacent to his, as the two vehicles were nearly touching.

Officer Laroche remained at the location of the Honda. When he looked inside the vehicle he observed a ski mask and a handgun on the passenger side of the vehicle. Both were admitted as evidence in the case.

Allen Galland, a bus driver for the Regional Transit Authority, testified at trial that at approximately 4:30 p.m. he was approaching Stillwater Street and Lake Forest Boulevard when he observed a young man peeking out from the corner of a residence. The subject, later identified by Mr. Galland as Joseph, then ran and flagged the bus down. The subject boarded the bus, paid the fare and sat down. As the driver started to pull off, the subject told him to stop. As he did, another young man came out of the bushes from the neutral ground and boarded the bus. He was wearing camouflage pants and holding a camouflage shirt. He also had what the bus driver described as cornrows in his hair. Joseph then said something to the first subject, Burnes, who then paid his fair. Mr. Galland described Joseph as being in a big hurry. When the bus was at Crowder and Lake Forest Boulevard, the police stopped the bus and apprehended Joseph and his accomplice, Burnes. Mr. Galland could not recall exactly what he said to the officers except that he explained where Joseph and Burnes had gotten on the bus.

After being apprehended on the bus, Joseph and Burnes were returned to Officer Laroche's location, where Officer Laroche positively identified each of them as the two who fled from the stolen Honda. Officer Laroche informed the assisting officers that Joseph, who was now attired in a white thermal shirt, had been wearing a camouflage jacket. Officer Laroche positively identified the pants and jacket at trial, and they were admitted as evidence. The Officer also positively identified Joseph in court.

Mr. Lavigne also testified at trial that he was transported to the scene by Detective David Patrolia, where he identified Joseph to the extent possible considering Joseph had a ski mask on at the time of the robbery. Mr. Lavigne also identified the gun and ski mask as those used in the robbery, and related that approximately thirty minutes passed between the robbery and when he made the identification. Detective Patrolia identified twenty-nine dollars in U.S. currency recovered from Joseph.

Burnes testified that on the day in question, he and Joseph had planned on taking a trip out of town. Burnes knew Joseph through Joseph's sister, with whom Burnes had a relationship. Joseph picked Burnes up at a friend's house, while he was driving a Jeep. Burnes testified that he knew the Jeep was stolen when he got in it because Joseph told him so. On cross-examination, it was noted that Burnes had previously testified that he knew the Jeep was stolen because the steering column was "all cracked up." Burnes testified that they drove to New Orleans East where it began to rain; however, the

windshield wipers on the Jeep would not function so Joseph and
Burnes decided to procure another vehicle.  While Joseph and Burnes
were driving around the Kingswood area, they observed Mr. Lavigne
pull into his driveway.  Burnes recounted how Joseph, wearing the ski
mask, exited the car and robbed Mr. Lavigne.  He related that they
both entered the Honda a short distance from the location of the
robbery and abandoned the Cherokee.  Burnes took control of the
vehicle and further recounted how they fled on foot after Joseph and
Burnes were nearly stopped by the police and their subsequent
apprehension on the bus.

 Burnes also testified that he had entered a plea negotiation
with the state wherein he would plead guilty to the crime of
possession of stolen property in exchange for his testimony and that
he would receive a four-year suspended sentence, with four years
probation.[17]

### Ineffective Assistance of Counsel

Petitioner claims that his trial counsel was ineffective.  The state courts rejected
petitioner's ineffective assistance of counsel claim without assigning reasons.

In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court
established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner
seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient
performance prejudiced his defense.  See Strickland, 466 U.S. at 697.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's
conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron
v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below
an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).
Analysis of counsel's performance must take into account the reasonableness of counsel's actions

---

[17]  State v. Joseph, No. 2000-KA-2760, at pp. 1-5 (La. App. 4th Cir. Dec. 5, 2001) (unpublished);
State Rec., Vol. I of III.

in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

        In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

        Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson, 227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  Strickland, 466 U.S. at 697.

        A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state

court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

Petitioner first argues that his counsel was ineffective with respect to the multiple offender proceedings held on June 24, 1999. At that hearing, plaintiff was advised of his rights by the trial judge and of the fact that he was charged with having previously pled guilty to possession of a stolen automobile in Orleans Parish Criminal District Court on October 31, 1991. After the parties stipulated that Officer Glen Burmaster was a fingerprint expert, Burmaster testified that he had taken petitioner's fingerprints that day and found that they were a match for the fingerprints from the arrest register and the bill of information relating to the 1991 conviction. Based on that testimony, the trial court found the 1991 conviction did in fact relate to petitioner. Further, based on the conviction records introduced, the trial court found that petitioner was advised of his rights in connection with the predicate conviction.[18]

Petitioner claims that he advised his attorney of alleged irregularities with respect to the waiver of rights form from the 1991 conviction. Petitioner concedes that it was his signature at the bottom of the form; however, he advised his attorney that it was not his signature at the top of the form or his initials by the waiver of each specifically enumerated right. Petitioner argues that, armed with that information, counsel should have brought in a handwriting expert to verify petitioner's claims. However, even if counsel had raised an objection to the sufficiency of the waiver of rights form and, additionally, had produced some affirmative evidence to support the contention

---

[18] State Rec., Vol. I of III, transcript of June 24, 1999.

that the prior plea was not intelligently and voluntarily entered, then, under Louisiana law, the burden

would simply have shifted to the state to prove the constitutionality of the plea. State v. Shelton, 621

So.2d 769, 779 (La. 1993). The Louisiana Supreme Court has held:

> The State will meet its burden if it produces a "perfect" transcript of
> the taking of the guilty plea, one which reflects a colloquy between
> the judge and defendant wherein the defendant was informed of and
> specifically waived his right to trial by jury, his privilege against self
> incrimination, and his right to confront his accusers.

Id. at 780. In the instant case, it is obvious that petitioner was not prejudiced by counsel's failure

to require such proof, because it is clear that the state, if so required, could have produced a "perfect

transcript." Included in the state court record is a transcript of 1991 plea colloquy.[19] That transcript

reflects that petitioner was advised that he had the following rights: (1) to trial, including trial by

jury; (2) to appeal; (3) to confront and cross-examine his accusers; (4) to compulsory process of

witnesses; and (5) not to incriminate himself or be compelled to testify at trial. Petitioner testified

that he understood those rights and was freely, voluntarily, and knowingly waiving them. Because

petitioner cannot demonstrate prejudice, his claim that counsel was ineffective in the multiple

offender proceeding necessarily fails.

Petitioner also claims that his counsel was ineffective in failing to properly litigate

a Fourth Amendment claim relating to petitioner's arrest and the seizure of the clothing which

connected him to the crime.[20] Petitioner's claim is based on apparent error in Officer Laroche's

---

[19]   State Rec., Vol. I of III, transcript of October 31, 1991.

[20]   This Court notes that the United States Supreme Court has held: "In Kimmelman [v.
Morrison, 477 U.S. 365, 374 (1986)], the Court held that although certain Fourth Amendment
violations are themselves not cognizable on federal habeas review, see Stone v. Powell, 428 U.S.
465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), counsel's failure to litigate such Fourth Amendment

testimony at a pretrial hearing concerning how police came to apprehend petitioner on the bus.  At

that hearing, Laroche testified:

> [W]e got a call that there were two subjects in the bushes matching
> the description that I had given to the other officers.  They were
> ducking in and out of the bushes as though they were looking for
> something.  Well, when the RTA bus passed on Lake Forest, they ran
> from the bushes to the bus.  The informant that called about the
> information being suspicious to him advised the police of that.  We,
> ah – well, not "we."  Other officers stopped the bus at Lake Forest
> and Crowder and apprehended the both subjects with the clothing
> description that they were still wearing the same clothes.[21]

Petitioner argues that in fact no *male telephoned* to report such suspicious activity.  Rather, police

records show that a *female flagged down* officers and reported the suspicious activity.

The Court fails to see the significance of the fact that Laroche either did not know or

simply did not accurately recall how the suspects actually came to be apprehended on the bus.  It is

simply of no consequence.  Laroche was neither the officer who received the report of the suspicious

activity, nor the officer who boarded the bus to apprehend the suspects.  Whether the suspicious

activity was reported by a man or by a woman, by telephone or in person, does not change the fact

that the police received information from a citizen who reported that persons matching the

description of the perpetrators were acting suspiciously and boarded a public bus, which then led

police, acting on that information, to also board the bus and arrest petitioner.  Petitioner does not

explain, and this Court fails to see, how his rights under the Fourth Amendment were supposedly

---

claims competently may still give rise to a cognizable ineffective-assistance claim."  <u>Lockhart v.
Fretwell</u>, 506 U.S. 364, 380 (1993).

[21] State Rec., Vol. I of III, transcript of May 8, 1998, p. 15.

violated.[22] Therefore, the Court finds no basis for holding that counsel performed deficiently in not pursuing a Fourth Amendment claim or petitioner was prejudiced as a result.

Accordingly, petitioner has failed to demonstrate that the state court decisions regarding his ineffective assistance of counsel claims were contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, this Court rejects petitioner's claims that his counsel was ineffective.

## RECOMMENDATION

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Gerald Joseph be **DISMISSED WITH PREJUDICE.**

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

---

[22] "Probable cause for a warrantless arrest exists when the totality of the facts and circumstances within an officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed an offense." United States v. Hebert, 131 F.3d 514, 524 (5th Cir. 1997). "[P]olice officers may develop probable cause for a warrantless arrest on the basis of information communicated to them by other officers." United States v. Chappell, 6 F.3d 1095, 1100 (5th Cir. 1993).

New Orleans, Louisiana, this ___7___ day of October, 2005.


**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**